**UNITED STATES of America**

v.

**Richard MARTENSON.**

**Nos. 90 C 1274, 81 CR 747–2.**

United States District Court,
N.D. Illinois, E.D.

May 9, 1991.

---

---

John F. Podliska, Asst. U.S. Atty., Chicago, Ill., for U.S.

Richard C. Leng, Chicago, Ill., for Richard Martenson.

### MEMORANDUM OPINION
### AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

In 1981, defendant Richard Martenson was indicted for violating the RICO statute, 18 U.S.C. § 1961, *et seq.*[1] The indictment alleged that $115,149.00 that was paid to Martenson by First Guaranty Metals (FGM) was subject to forfeiture. In 1982, Martenson was convicted and the $115,-149.00 was ordered forfeited. Martenson's conviction before another judge of this court was reversed on appeal in 1985. In 1986, Martenson was retried and reconvicted and the $115,149.00 was once again found subject to forfeiture. On February 28, 1986, the court entered an order of

---

1. Specifically, Mr. Martenson was indicted under 18 U.S.C. § 1962(c) which provides that, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

forfeiture and directed the U.S. Marshal to seize the forfeited property.

The government was unable to locate any assets of Richard Martenson, other than his home in Minnesota which he shared with his wife Debra Martenson. On May 9, 1990, the government filed an *ex parte* motion for an order of seizure of defendant's house. The court granted the motion. The U.S. Marshal then issued a "Notice of Forfeiture" which indicated that the government intended to dispose of the property. The Notice directed any persons or entities which alleged an interest in the property to file petitions with the court pursuant to 18 U.S.C. § 1963. Debra Martenson filed a notice of claim to the property. Minvesco Corporation, a Minnesota corporation, also filed a notice of claim to the property, alleging that it purchased the fee title to the real estate on June 15, 1988. Debra Martenson and Richard Martenson have both filed motions to dismiss the forfeiture proceeding.[2] For the following reasons, the motions to dismiss are denied.

### Debra Martenson's Motion to Dismiss

■ Debra Martenson argues that the court does not have jurisdiction to enter a forfeiture order against the house because the forfeiture order is not timely. Mrs. Martenson maintains that a court loses jurisdiction to modify a sentence 120 days after the sentence is imposed, or if the sentence is appealed, 120 days after the affirmance of the sentence. The forfeiture order in this case comes approximately four years after Richard Martenson's sentencing. While it is true that under Fed. R.Crim.P. 35(b), a court loses jurisdiction to *reduce* a sentence after 120 days,[3] this is not a case in which the court is attempting to reduce a sentence. In fact, the court is not altering or modifying Mr. Martenson's sentence at all. The value of the forfeiture is still $115,149.00.[4] By ordering forfeiture of the house, the court is simply allowing the government to carry out the forfeiture judgment which was previously imposed.

Debra Martenson next argues that the court cannot enter an order forfeiting the house because the court lacks statutory authority to do so. More specifically, Mrs. Martenson contends that the house is not forfeitable property within the meaning of 18 U.S.C. § 1963. Under 18 U.S.C. § 1963(a), property acquired in violation of the RICO statute or property which affords a source of influence over an enterprise is subject to forfeiture. Mrs. Martenson claims that her husband bought the house after he left FGM, so the house cannot be considered to have been acquired in violation of RICO. Mrs. Martenson further argues that the court lacks statutory authority to order seizure because the government failed to follow the Federal Rules of Criminal Procedure relating to forfeiture. Fed. R.Crim.P. 7(c)(2) provides that "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment ... shall allege the extent of the interest or property subject to forfeiture." Fed. R.Crim.P. 31(e) mandates that "a special verdict shall be returned as to the extent of the interest or property subject to forfeiture ..." In this case, neither the indictment nor the special verdict specified that defendant Martenson's house was subject to forfeiture and therefore Mrs. Martenson

---

**2.** Minvesco Corporation filed a motion to adopt the motion to dismiss filed by claimant Debra Martenson. The court grants the motion to adopt and states that the court's holdings regarding Debra Martenson's arguments will be equally applicable to Minvesco.

**3.** Rule 35(b) provides that "[a] motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation ..."

**4.** Although the house is apparently worth more than $115,149.00, the government intends to take only $115,149.00 of the proceeds from the house to satisfy the forfeiture judgment. Thus, Mrs. Martenson's assumption that the government was going to take the entire value of the house was wrong, and the Eighth Amendment argument she made based on this assumption is moot.

maintains that the court cannot enter an order of forfeiture.

In response Mrs. Martenson's statutory arguments, the government points to 18 U.S.C. § 1963(m) as authority for ordering forfeiture of the house. Section 1963(m) provides that "[i]f any of the property described in subsection (a), as a result of any act or omission of the defendant—(1) cannot be located upon the exercise of due diligence ... the court shall order forfeiture of any other property of the defendant up to the value of [the unavailable property]." As noted above, the government stated in its *ex parte* motion that it was unable to locate any other assets of Richard Martenson other than the Martenson residence and therefore the government moved for forfeiture of the house as a substitute asset, pursuant to section 1963(m).

However, Mrs. Martenson argues that section 1963(m) cannot be used in this case because the section was not enacted until after Mr. Martenson was sentenced. The government responds that the court can give retroactive effect to section 1963(m), because to do so would not violate the *ex post facto* clause of the Constitution. "[A]ny statute ... which makes more burdensome the punishment for a crime, after its commission ... is prohibited as *ex post facto*." *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977), *quoting, Beazell v. Ohio*, 269 U.S. 167, 169–170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925). Yet, "a procedural change is not *ex post facto*." *Id.* 432 U.S. at 293, 97 S.Ct. at 2298. In the case at bar, the government claims that the addition of section 1963(m) is a procedural change, since it does not add to the amount a defendant must forfeit but instead simply gives the government another means of collecting the amount adjudged forfeited. The court agrees with this analysis and holds that the retroactive application of section 1963(m) in this case does not violate the *ex post facto* clause of the Constitution. *See United States v. Reed*, 924 F.2d 1014, 1017 (11th Cir.1991) (section 1963(m) does not change the quantum of punishment and therefore

its retroactive application does not violate the *ex post facto* clause); *Cf. Alexander v. Robinson*, 756 F.2d 1153, 1156 (5th Cir. 1985) (court found that new procedure to collect for inadvertent over-issuance of food stamps could be applied retroactively because change was procedural in nature).

Mrs. Martenson next argues that the court cannot order forfeiture of the house because the Minnesota Homestead Statute, M.S.A. § 501.01 *et seq.*, prohibits seizing a home "on account of any debt." In support of her contention that Minnesota law prohibits forfeiture of the house, Mrs. Martenson cites two cases in which federal courts failed to order forfeiture based on an analysis of the applicable state property law. *See United States v. One Single Family Residence*, 894 F.2d 1511 (11th Cir. 1990) and *United States v. Marx*, 844 F.2d 1303 (7th Cir.1988). However, in both of the aforementioned cases, the claimants alleged that they were innocent owners of forfeited property and the courts looked to state property law only to determine the extent of the claimants' interest in the property. In contrast, in this case Mrs. Martenson is not claiming to be an innocent owner of the house. She claims that the Minnesota Homestead Act bars seizure of the house even though she has no ownership interest in it.

If the court were to accept Mrs. Martenson's argument, the court would be allowing Minnesota law to thwart the purposes of the RICO forfeiture provisions. However, the RICO statute provides that property subject to forfeiture shall be forfeited to the United States "irrespective of any provision of State law ..." 18 U.S.C. § 1963(a). Moreover, in an analogous case, the Supreme Court held that under the Supremacy Clause of the U.S. Constitution the federal government could sell a delinquent taxpayer's home, despite that fact that Texas Constitution gave each spouse a separate possessory interest in the homestead. *See United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). In her reply, Mrs. Martenson argues that the *Rodgers* case is inapplicable because it is distinguishable in many ways

from the case at bar. For example, under the tax lien statute at issue in *Rodgers,* a court has discretion to refuse to order seizure if innocent third parties would be "unduly harmed" by the sale of property, whereas under the criminal RICO forfeiture statute, courts are not afforded such discretion. Furthermore, the proceeding in *Rodgers* was an *in rem* proceeding against the property and the proceeding in the case at bar is *in personam* against Mr. Martenson's interest in the home. While these distinctions are important, they do not undercut the basic premise of *Rodgers* that if innocent third parties are afforded due process and are given a chance to adjudicate their claims to property subject to forfeiture,[5] the federal government can order forfeiture of the property, despite state laws to the contrary.

### Richard Martenson's Motion to Dismiss

■ As a preliminary matter the court notes that under 18 U.S.C. § 1963(*l*)(2), "any person, *other than the defendant,* asserting a legal interest in property which has been ordered forfeited ... may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 18 U.S.C. § 1963(*l*)(2) (emphasis added). Therefore, it seems that Richard Martenson does not have standing to challenge the seizure order. However, even if he did have standing, Mr. Martenson has not presented any arguments which would require dismissal of the seizure order. Mr. Martenson argues, as did his wife, that the court lacks jurisdiction to enter the seizure order and that the Minnesota Homestead Act precludes seizure. For the reasons stated above, the court rejects these arguments. Mr. Martenson also argues that the court cannot order seizure because the forfeiture verdict is "incorrect." However, the Seventh Circuit affirmed the forfeiture so Mr. Martenson cannot re-litigate the issue in the district court. Mr. Martenson next requests that the court stay the forfeiture pending the appeal of the court's denial of his section 2255 petition. Mr. Martenson presents no authority for such a stay and therefore the court will not grant the stay. Finally, Mr. Martenson requests that the court transfer this case to the federal district court in Minnesota under 28 U.S.C. § 1391(b). However, section 1391(b) only applies to civil cases. Moreover, 18 U.S.C. § 1963(j) provides this court with jurisdiction to enter orders pertaining to forfeitures, regardless of the location of the property subject to forfeiture. Therefore, Mr. Martenson's request for a transfer is denied.

### Conclusion

For the aforementioned reasons, the court denies the motions to dismiss the forfeiture proceedings brought by Debra Martenson, Richard Martenson and Minvesco Corporation.

---

**5.** Mrs. Martenson claims, without citation to authority, that she was denied her Fifth Amendment right to due process because the residence was not alleged as subject to forfeiture in the indictment. First, because she was not a defendant in the criminal case, she would not have been able to intervene in the criminal proceedings even if the residence was alleged to be subject to forfeiture in the indictment. Furthermore, Mrs. Martenson was notified and given an opportunity to be heard before the government disposed of the property, so her Fifth Amendment due process rights were adequately protected.